**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

PHUOC DUC PHAM AND TRUNG THANH NGUYEN,

Petitioners,

v.

MARKWAYNE MULLIN, ET AL.,

Respondents.

Case No. 5:26-cv-05246-AJR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

## I.

## INTRODUCTION

On September 10, 2026, Petitioners Minh Tran, Phuoc Duc Pham, and Trung Thanh Nguyen, immigration detainees represented by counsel, filed a Verified Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (the "Petition"), challenging their detention in immigration custody. (Dkt. 1 at 2-4.) On September 17, 2026, Respondents Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), Todd Blanche, Attorney General of the United States, David Venturella, Acting Director of Immigration and Customs Enforcement ("ICE"), Ernesto Santacruz, Jr., Los Angeles Field Office Director of

ICE, and Fereti Semaia, Warden of the Adelanto ICE Processing Center (collectively, "Respondents") filed an Answer to the Petition (the "Answer"). (Dkt. 8.) On September 21, 2026, Petitioners Minh Tran, Phuoc Duc Pham, and Trung Thanh Nguyen filed a Traverse in Support of the Petition (the "Traverse"). (Dkt. 9.) On November 5, 2026, Petitioners Minh Tran, Phuoc Duc Pham, and Trung Thanh Nguyen filed a Stipulation to Dismiss Petitioner Minh Tran only from the case. (Dkt. 14.) The parties have consented to proceed before a U.S. Magistrate Judge for all purposes. (Dkts. 3, 6.) **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioners Phuoc Duc Pham and Trung Thanh Nguyen (collectively, "Petitioners") from custody on their prior conditions of release.**

## II.

## FACTUAL BACKGROUND

The following facts are taken from the Petition, which is verified by counsel. (Dkt. 1 at 31.) Respondents had the opportunity to dispute these facts or provide contrary facts, but declined to do so. (Dkt. 8.) Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

**Petitioner Phuoc Duc Pham ("Petitioner Pham"):** Petitioner Pham fled Vietnam as a refugee with one of his siblings in or around 1979 when he was 19 years old, arriving first in the Netherlands. (Dkt. 1 at 8.) Around 1981, Petitioner Pham's parents and his remaining siblings fled from Vietnam and arrived in the United States as refugees. (Id.) After his family established themselves in the United States, Petitioner Pham received his Lawful Permanent Resident ("LPR") status through a family petition and reunited with his parents and eleven siblings in

the United States around 1986. (Id.)

In 1997, Petitioner Pham was detained by immigration officers after being released on parole for a 1995 conviction related to check fraud. (Id. at 8-9.) Petitioner Pham was held in immigration detention in Louisiana, and his removal proceedings commenced while he was detained. (Id. at 9.) Around March of 1997, Petitioner Pham agreed to a voluntary departure and an Immigration Judge ordered him removed. (Id.) Petitioner Pham was held in immigration custody for nearly two years without any explanation or custody review. (Id.) Because Respondents could not find a country to remove him to, and after determining that he was neither a flight risk nor a danger to the community, Respondents released Petitioner Pham on an Order of Supervision ("OSUP") in 1999. (Id.)

Petitioner Pham has attended his ICE check-ins and complied with the requirements for his release. (Id.) Petitioner Pham missed only two appointments in the past 27 years of reporting to ICE field officers. (Id.) He complied with Respondents' adjusted requirement when he was instructed or notified. (Id.) For example, Respondents adjusted the frequency of his check-in appointments to twice a year, and they reverted the frequency to once a year soon after he attended those appointments. (Id.)

Petitioner Pham has established a life here in the United States. (Id.) He maintained employment as a construction superintendent for commercial and residential projects. (Id.) Petitioner Pham is valued in his trade for managing large teams and mentoring young contractors. (Id.) He also volunteers his skills and labor in his community. (Id.) For example, Petitioner Pham built an Accessory Dwelling Unit for the Chùa Bát Nhã Buddhist temple in Santa Ana, California. (Id.)

In late June of 2026, Petitioner Pham received a letter from Respondents requiring him to attend a case review meeting and instructing him to bring any documents related to his case to the Santa Ana ICE field office. (Id.) On July 21, 2026, Petitioner Pham complied and reported for his case review, and when he

arrived at the Santa Ana field office, two officers immediately arrested him. (Id.) The officers did not inform Petitioner Pham whether travel documents were requested for him or of any potential timeline for his removal. (Id.) Respondents then transported Petitioner Pham to the Adelanto ICE Processing Center where is currently detained. (Id.)

Once detained, Petitioner Pham was called to speak to the Vietnamese Consulate. (Id.) After speaking with Petitioner Pham, the Consulate found that it does not have any records pertaining to him, including birth, school, or church records that would verify his identity and ties to Vietnam. (Id.) Rather, the Consulate only mentioned records of Petitioner Pham's travel to Holland as a refugee. (Id.) Separately, the Netherlands Consulate recently verified that it does not have travel documents prepared for Petitioner Pham and it is not likely to obtain those because he was only a refugee there. (Id.) To this day, Petitioner Pham has not been given information about his removal to Vietnam or any other country, the status of his travel documents, or a timeline for his detention and contemplated removal. (Id. at 10-11.)

**Petitioner Trung Thanh Nguyen ("Petitioner Nguyen"):** Petitioner Nguyen came to the United States as a refugee from Vietnam in 1983, when he was about 13 years old. (Id. at 11.) Before arriving in the United States, Petitioner Nguyen was at Pulau Bidong Island for about six months, during which time he completed his immigration application and received LPR status upon arriving in the United States. (Id.) Around 2001, Petitioner Nguyen was convicted of interstate commercial robbery and detained by immigration officials upon his release from a California federal prison. (Id.) Respondents transferred Petitioner Nguyen to a detention center in Ariona and initiated removal proceedings against him around June 2001. (Id.) Petitioner Nguyen signed a voluntary departure agreement and was ordered removed on or about July 2001. (Id.) Because Respondents could not find a country to remove him to, and after determining he was neither a flight risk

nor a danger to the community, Respondents released Petitioner Nguyen on an OSUP.[1] (Id.)

For the past 25 years, Petitioner Nguyen complied with his OSUP requirements and attended all of his ICE check-ins, except for one in 2025. (Id.) When Petitioner Nguyen missed his appointment, Respondents did not send him notice about how he could remedy or reschedule the appointment. (Id.) Since being released on an OSUP, Petitioner Nguyen has worked as a manager in a coffee shop for the past 10 years. (Id. at 11-12.) Petitioner Nguyen is married and his spouse has a serious heart condition. (Id.) Petitioner Nguyen also has two U.S. citizen daughters, one who is attending university and the other who is completing high school. (Id.) Petitioner Nguyen was responsible for his daughter's daily care, routine, and taking care of the household. (Id.) Petitioner Nguyen took his daughter to school every morning, picked her up, and accompanied her to appointments. (Id.) Petitioner Nguyen also scheduled and attended all of his wife's medical appointments. (Id.)

On the morning of July 16, 2026, Petitioner Nguyen dropped of his daughter at school and arrived at work when he was suddenly re-detained by ICE. (Id.) While Petitioner Nguyen was driving to work, he noticed two unmarked vehicles following him and then the cars surrounded his vehicle. (Id.) The officers said they had a warrant, but did not present the warrant. (Id.) Without further explanation, the officers searched Petitioner Nguyen, confiscated his wallet, and arrested him. (Id.) The officers did not tell Petitioner Nguyen if he was being removed to Vietnam or any other country. (Id.) The officers did not inform him whether travel documents were requested for him, or of the timeline for his removal. (Id.) The

[1] According to the Form I-213 submitted by Respondents, Petitioner Nguyen appears to have been held in immigration custody from at least July 30, 2001, when he was ordered removed to Vietnam, until October 30, 2001, when he was released on an OSUP. (Dkt. 8-1 at 17.)

officers did not provide Petitioner Nguyen with an opportunity to respond to any potential reason for his re-arrest. (Id.)

Respondents ultimately transported Petitioner Nguyen to the Adelanto ICE Processing Center, where he remains detained. (Id. at 12-13.) Once detained, Respondents told Petitioner that they do not have travel documents to Vietnam, and that he has no choice but to sit in detention and wait for an update. (Id. at 13.) To this day, Petitioner Nguyen has not been given information about his removal to Vietnam or any other country, or a timeline for his detention and contemplated removal. (Id.) Since being detained, Petitioner Nguyen has developed significant rectal bleeding and has sought medical attention after noticing blood in his stool. (Id.) Despite submitting medical requests, Respondents have not provided him updates on his request for further examination. (Id.) Petitioner Nguyen is experiencing anxiety and significant emotion stress being away from his family. (Id.)

## III.

## PETITIONERS' CLAIMS

Petitioners' first claim for relief (Count One) is that Respondents' revocation of Petitioners' release violated 8 U.S.C. § 1231 and 8 C.F.R. §§ 241.13, 241.4. (Dkt. 1 at 16-20.) Petitioners' second claim for relief (Count Two) is that their re-detention by immigration authorities without prior notice or a pre-deprivation hearing violated their procedural due process rights. (Id. at 20-27.) Petitioners' third claim for relief (Count Three) is that their continued detention by immigration authorities violates their substantive due process rights. (Id. at 27-29.) Petitioners seek immediate release from custody on their prior OSUPs and an order enjoining their re-detention absent a pre-deprivation hearing at which the Government bears the burden of proof by clear and convincing evidence. (Id. at 29-30.) Petitioners further seek an order enjoining their re-detention under 8 U.S.C. § 1231(a)(6) unless

and until Respondents obtain travel documents for Petitioners' removal and provide fourteen days' notice. (Id. at 30.) Petitioners further seek an order enjoining their removal to a third country without adequate notice and an opportunity to be heard according to applicable regulations and due process. (Id.) Finally, Petitioners seek an award of reasonable attorneys' fees and costs under the Equal Access to Justice Act ("EAJA"). (Id.)

## IV.

## LEGAL STANDARD FOR IMMIGRATION DETENTION

The Immigration and Nationality Act ("INA") establishes the procedures governing detention, release, and removal of noncitizens ordered removed from the United States. The statute at issue here, 8 U.S.C. § 1231(a), applies to detention following the entry of final order of removal, including individuals in withholding-only proceedings. See Johnson v. Guzman Chavez, 594 U. S. 523, 533 (2021); Avilez v. Garland, 69 F.4th 525, 530 (9th Cir. 2023).

Under 8 U.S.C. § 1231(a)(1)(A), an alien who has been ordered removed must be detained during the 90-day removal period. 8 U.S.C. § 1231(a)(1)(A); see also Johnson v. Arteaga-Martinez, 596 U.S. 573, 578 (2022). Detention during the removal period is mandatory. See 8 U.S.C. § 1231(a)(2). After the 90-day removal period, "the Government 'may' continue to detain an alien who still remains here or release that alien under supervision." Zadvydas v. Davis, 533 U.S. 678, 683 (2001) (quoting 8 U.S.C. § 1231(a)(6)). However, Section 1231(a)(6) includes an implicit limit on "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Id. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. Recognizing constitutional concerns raised by such prolonged detention, the Supreme Court observed "Congress previously doubted the constitutionality of detention for more than six months," and, therefore,

"for the sake of uniform administration in the federal courts," established a presumptively reasonable six-month period for post-removal-order detention. Id. at 701. This six-month period is a presumption, not a guarantee of release, and detention may continue so long as removal remains reasonably foreseeable. Id.

After the six-month period, the burden is on the alien to show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Id.; see also 8 C.F.R. § 241.13 (setting out procedures to determine whether there is a significant likelihood of removal pursuant to Zadvydas). If the alien meets this burden, then the Government must "introduce evidence to refute that assertion" or release the alien. Id. However, the alien still "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. Importantly, "for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

## V.

## DISCUSSION

### A. Petitioners Have Demonstrated That Their Removals Are Not Reasonably Foreseeable Under *Zadvydas*.

Under 8 U.S.C. § 1231(a)(6), an alien subject to a final order of removal may be detained beyond the 90-day removal period only for a period reasonably necessary to effectuate removal. See Zadvydas, 533 U.S. at 689. Here, it is undisputed that Petitioners were ordered removed to Vietnam back in 1997 and 2001.[2] (Dkt. 1 at 9, 11; Dkt. 8-1 at 17, 27.) Therefore, the 90-day removal periods expired years ago and the question is whether Petitioners' detentions have become

---

[2] Petitioner Pham's removal order appears to include both Vietnam and Holland. (Dkt. 8-1 at 27.)

prolonged. See Zadvydas, 533 U.S. at 701. Recognizing the constitutional concerns raised by indefinite immigration detention, the Supreme Court established a presumptively reasonable six-month period for post-removal-order detention. See id. After that period, continued detention is permissible only if removal remains reasonably foreseeable. See id.

"Most courts to consider the issue have concluded that the Zadvydas period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them." Siguenza v. Moniz, 2025 WL 2734704, at *3 (D. Mass. Sep. 25, 2025); Ta v. Noem, 2025 WL 3716155, at *5 (C.D. Cal. Nov. 10, 2025) ("The Supreme Court's concern that indefinite or prolonged detention would be unconstitutional applies equally to a single prolonged detention as it does to a detention that is broken up into shorter periods."); accord Yakoub v. Marin, 2026 WL 922015, at *4 (C.D. Cal. Mar. 31, 2026). In other words, "the six-month period does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again." Sied v. Nielsen, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018). Instead, all periods of post-removal-order detention should be aggregated to determine whether the detention is prolonged under Zadvydas. See, e.g., Nguyen v. Scott, 796 F. Supp. 3d 703, 721-22 (W.D. Wash. 2025) (collecting cases).

Here, it is undisputed that Petitioner Pham was held in immigration custody pending removal for nearly two years back in 1997 when he was ordered removed. (Dkt. 1 at 9.) Petitioner Pham was ultimately released on an OSUP after immigration authorities could not find a country to remove him to. (Id.) Petitioner Pham was later re-detained by immigration authorities on July 21, 2026, and has been in immigration custody ever since. (Id.) As to Petitioner Nguyen, the Form I-213 submitted by Respondents appears to reflect that Petitioner Nguyen was held in immigration custody from at least July 30, 2001, when he was ordered removed to

Vietnam, until October 30, 2001, when he was released on an OSUP. (Dkt. 8-1 at 17.) Petitioner Nguyen was then re-detained by immigration authorities on July 16, 2026, and has been in immigration custody ever since. (Dkt. 1 at 12.) Thus, both Petitioners have been in post-removal-order detention for more than six months when the periods of detention are aggregated and therefore constitute prolonged detention under Zadvydas and Section 1231(a)(6). Because the six-month periods have elapsed and Petitioners' detentions are no longer "presumptively reasonable," the burden shifts to Petitioners to demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701. The Court therefore turns to whether Petitioners have satisfied that burden.

The Court concludes that Petitioners have met their burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. Indeed, it is undisputed that immigration authorities have been unable to obtain a travel document for Petitioner Pham to be removed to Vietnam or Holland for the past 29 years since the issuance of the final order of removal. (Dkt. 8-1 at 27.) Moreover, the Vietnamese Consulate found that it does not have any records pertaining to Petitioner Pham, including birth school, or church records that would verify his identity and ties to Vietnam. (Dkt. 1 at 10.) Similarly, the Netherlands Consulate recently verified that it does not have travel documents prepared for Petitioner Pham and it is not likely to obtain those because he was only a refugee there. (Id.) As to Petitioner Nguyen, it is also undisputed that immigration authorities have been unable to obtain a travel document for him to be removed to Vietnam for the past 25 years since the issuance of the final order of removal. (Dkt. 8-1 at 17.) Moreover, Respondents told Petitioner Nguyen that they do not have travel documents to Vietnam and that he has no choice but to sit in detention and wait for an update. (Dkt. 1 at 13.)

Many courts have found that removal was not reasonably foreseeable where

the Government had been unable to obtain travel documents. See, e.g., Hung v. Marin, 2026 WL 712220, at *5 (C.D. Cal. Mar. 5, 2026) ("Notably, Hung was initially ordered removed in 1997, with Vietnam being designated as the country of removal. Despite being ordered removed more than twenty-seven years ago, no travel document was procured and Respondents have not provided any indication beyond anecdotal accounts that removal is reasonably foreseeable. Taken together, Hung's circumstances raise doubts that Vietnam will accept him." (citations omitted)); Martinez v. Noem, 2026 WL 559778, at *3 (S.D. Cal. Feb. 27, 2026) ("Respondents failed to secure travel documents, or alleged potential for travel documents, for Petitioner *before* his re-detention."); Valdez-Batista v. Immigr. & Customs Enf't Field Off. Dir., 2026 WL 449531, at *3 (W.D. Wash. Jan. 30, 2026) (relying in part on the Government's failure to deport petitioner for 13 years and the fact that the Government had not been able to secure travel documents as providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" (internal quotation marks omitted)), report and recommendation adopted, 2026 WL 447344 (W.D. Wash. Feb. 17, 2026); Kuot v. Bondi, 2025 WL 3763930, at *2 (W.D. Wash. Dec. 30, 2025) ("Petitioner has met his burden because it is undisputed the government has failed to indicate a date or timeframe for his removal, has not even completed a travel document request to submit to Vietnam and has not set forth facts showing when it expects to finalize or send the travel document request to Vietnam.").

Thus, Petitioners have shifted the burden to Respondents to produce evidence to rebut this showing. See Zadvydas, 533 U.S. at 701. However, Respondents did not provide any evidence to rebut this showing such as evidence of efforts to obtain travel documents. (Dkt. 8.) Instead, Respondents simply incorrectly argue that Petitioners have not been in post-removal-order detention for more than six months. (Id. at 2-3.) Therefore, the Court concludes that Respondents have failed to rebut Petitioners' showing and the Court must conclude that Petitioners' removals are not

reasonably foreseeable under Zadvydas. See Zadvydas, 533 U.S. at 701. Accordingly, Petitioners' detentions under 8 U.S.C. § 1231(a)(6) are no longer authorized and Petitioners are entitled to release. See id. at 699 ("[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute.").

**B. Prospective Injunctive Relief Is Warranted.**

The Court further concludes that Petitioners are entitled to notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i) should Respondents attempt to re-detain Petitioners in the future. See, e.g., Valdez-Batista v. Immigr. & Customs Enf't Field Off. Dir., 2026 WL 449531, at *4 (W.D. Wash. Jan. 30, 2026) ("[I]n the event they seek to re-detain Petitioner in the future, Respondents must provide notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i)."). Indeed, the re-detention of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13. The regulation was "intended to provide due process protections to noncitizens following the removal period as they are considered for continued detention, release, and then possible revocation of release." Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1163 (S.D. Cal. 2025) (internal quotation marks, brackets, and ellipses omitted). The regulation states, in part, that "[t]he Service may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13. The regulation also provides that, "[u]pon revocation [of an OSUP], the [noncitizen] will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3).

The Court further concludes that Petitioners are entitled to written notice and

a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3) before any attempted third-country removal. See, e.g., Valdez-Batista, 2026 WL 449531, at *5 ("Accordingly, should Respondents take steps to remove Petitioner to a country other than Cuba, they must provide Petitioner with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3)."). Where the Government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but it must comply with both the INA, 8 U.S.C. § 1231(b), and the Due Process Clause. See Aden v. Nielsen, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); Kumar v. Wamsley, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025) ("[T]he Government must follow the same multi-tiered process for selecting a country of removal that applied in the removal proceedings."). To comply with due process, the Government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. See Aden, 409 F. Supp. 3d at 1019. Moreover, the INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened . . . because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The Government must "make a determination regarding a noncitizen's claim of fear before deporting him." Aden, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A).

Many courts have held that if a noncitizen claims fear of removal to a designated third country, the Government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. See, e.g., Nguyen v. Scott, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) ("Both the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the

removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims. This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held." (internal quotation marks, brackets, and citation omitted)); accord A.A.M. v. Andrews, 815 F. Supp. 3d 1124, 1141 (E.D. Cal. 2025); Gomez v. Mattos, 2025 WL 3101994, at *6 (D. Nev. Nov. 6, 2025); M.T.M. v. Andrews, 2025 WL 4058220, at *9 (C.D. Cal. Sept. 11, 2025).

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioners have made such a showing here. Petitioners have suffered irreparable injuries by being detained since July of 2026 for the purpose of removal even though there is no significant likelihood of removal in the reasonably foreseeable future. Petitioners would again suffer irreparable harm if Respondents re-detain them without a significant likelihood of removal in the reasonably foreseeable future and legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. The balance of hardships and public interest in merely requiring Respondents to comply with their own regulations and provide basic due process in the event they seek to re-detain Petitioners for purposes of removal or remove them to a third country, versus forcing Petitioners again to suffer detention and file a habeas petition to secure relief, favor the imposition of a limited injunction.[3]

[3] Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. (cont'd . . .)

Thus, the Court concludes that Petitioners have made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v. Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

**C. Petitioners Are Prevailing Parties Under The EAJA.**

Finally, the Court notes that Petitioners also requested an award of reasonable attorney's fees and costs under the EAJA. (Dkt. 1 at 30.) The Court will consider an application under the EAJA that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

## VI.

## CONCLUSION

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioners Phuoc Duc Pham and Trung Thanh Nguyen (collectively, "Petitioners") from custody on their prior OSUPs (only those conditions in place prior to Petitioner Pham's re-detention on July 21, 2026 and Petitioner Nguyen's re-detention on July 16, 2026). Respondents shall also immediately return any confiscated property and documents to Petitioners upon

---

County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

release. Respondents shall not re-detain Petitioners under 8 U.S.C. § 1231 without first providing notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i). Respondents shall not attempt to remove Petitioners to any third country not identified in their removal orders without first providing written notice of intent to do so and a meaningful opportunity to respond in reopened removal proceedings under 8 U.S.C. § 1231(b)(3). Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

DATED: November 13, 2026

HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE